FILED
RICHARD W. NAGEL
CLERK OF COURT

2016 JAN 11  PM 2: 32

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 1:14cr124 |
| Plaintiff, | Judge Timothy S. Black |
| v. | Mag. Judge Stephanie K. Bowman |
| JUSTICIA RIZZO, | |
| Defendant. | |

### REPORT AND RECOMMENDATION

Pursuant to local practice, this matter has been referred to the undersigned for initial consideration and a Report and Recommendation. (Doc. 15). This matter was initially before the undersigned following a bench trial wherein the Defendant was found guilty of disorderly conduct in violation of 38 C.F.R. § 1.218(a)(5), (b)(11). (Doc. 1-1). Defendant, then represented by counsel, timely appealed her conviction to District Court Judge Timothy S. Black. (*Id*). Judge Black affirmed the conviction on March 31, 2015. (Doc. 10). Defendant, now again *pro se*, moved for a new trial on April 24, 2015 (Doc. 12) and requested in forma pauperis status. (Doc. 13). The Government filed a memorandum in opposition to the Defendant's motion for a new trial on August 3, 2015. (Doc. 17). Defendant has not filed a reply in support of her motion and time to do so has now expired.

I.  Facts

The facts of this case have been clearly set forth by Judge Black in his March Order (Doc. 11); however, for the convenience of the Court and the parties, that portion of Judge Black's Order will be restated here, in its entirety.

On December 19, 2013, Charles Smith, president of the American Federation of Government Employees local union, presided over a union meeting in a conference room at the VA Medical Center in Cincinnati, Ohio. (Doc. 4 at 3-4). Several union members attended the meeting in person, including Defendant, Alicia Williams, and Elizabeth Benton. (*Id.* at 5, 34, 76). Several others participated in the meeting via video conference. (*Id.* at 59).

Smith testified that Defendant spoke without being recognized and interrupted the flow of the meeting after several warnings. (Doc. 4 at 5).[1] Smith perceived Defendant's conduct to be disruptive, condescending, rude, and sarcastic. (*Id.* at 6). According to Smith, while Defendant was not overly loud, she could be heard. (*Id.*) Smith recalled that it appeared that Defendant called Williams a thief and that Williams "started tearing up." (*See id.* at 25-26, 28). Williams testified that Defendant was mumbling and using profanity, while looking directly at her. (*Id.* at 43-44).[2] Smith asked Defendant to leave the meeting. (*Id.* at 6-7). Defendant left the conference room on her own accord, and the meeting continued in her absence. (*Id.* at 6-7, 20). At the

---

[1] Williams testified that several other people also spoke and laughed out of turn and that Smith warned those who were making comments that they needed to wait their turn. (*Id.* at 35, 40).

2

conclusion of the meeting, Defendant went back into the conference room and asked Smith for a check. (Doc. 4 at 8). Smith, Williams, and others left the conference room and walked down the corridor. (*Id.* at 12-13, 37).[3] Smith testified that Defendant followed behind Williams and continued to "mouth[] off." (*Id.* at 13). Williams testified that Defendant came from behind and made negative comments about her, including characterizing her as a "felon." (*See id.* at 37-38).[4]

Smith testified that he ushered the union members into an elevator so that nothing escalated. (Doc. 4 at 13). Benton, who was walking toward the elevator, testified that Defendant's comments felt like threats due to the tone of her voice and the manner in which she approached the group. (*Id.* at 76-77). Garry Cutright, who was inside the elevator, testified that he observed an "altercation of sorts going on" outside the elevator. (*Id.* at 74-75). Surveillance video footage depicts a group of people walking from the conference room to the corridor that housed the elevators and Defendant pointing her finger and making comments toward the group.[5] Smith asked Williams if she needed an escort to her car, and Williams requested one. (*Id.* at 40). Williams

---

[2] Specifically, Williams testified that Defendant called her a "bitch." (*Id.* at 43). Williams earlier testified, perhaps contradictorily, that Defendant did not make any personal attacks on her. (*Id.* at 36). Williams noted that Defendant was not screaming at the meeting. (*Id.*)
[3] Smith admitted that he may have said Defendant needed psychiatric help after the meeting. (*Id.* at 21-22). According to Smith, he was voicing his opinion like Defendant voiced hers. (*Id.* at 22).
[4] At the time, Williams was running for union office. (*Id.* at 38).
[5] The Government played the surveillance video footage during Smith's direct examination. (*Id.* at 10-13). The footage does not have audio. As the parties note, and as confirmed by this Court's review of the footage, nobody stopped or acknowledged Defendant while walking toward the corridor with the elevators.

3

testified that she was concerned for her safety. (*Id.* at 39-40).[6] Defendant was issued a citation for disorderly conduct. (Doc 1-2).[7]

In her motion for a new trial, the Defendant argues that she should be granted a new trial based upon (1) new evidence, (2) an alleged *Brady* violation under *Brady v. Maryland*, 373 US 83 (1963), (3) a lack of jurisdiction and discrimination, (4) outrageous government conduct, (5) a violation of her constitutional rights, (6) the presentation of false testimony by the prosecution, and (7) a denial of counsel and ineffective assistance of the counsel on appeal. (Doc. 12).

The government argues that the Defendant has failed to show the existence of any newly discovered evidence and that all her other claims are time barred. (Doc. 17). This Court agrees.

---

[6] The Government rested after the testimony of Smith and Williams. Defendant called several additional witnesses. Tony Hayes was present at the meeting and testified that it is normal for people to speak out of turn during the meetings and that, at the meeting in question, Defendant did not attack anybody; she simply spoke out of turn. (*Id.* at 56). Rhea Taylor was present at the meeting and testified that Defendant did not attack or threaten anyone at the meeting. (*Id.* at 56, 58). Greg Allen was present at the meeting and testified that he did not observe anyone attacking or making any obscene statements at the meeting. (*Id.* at 73). Linda Hudson was present at the meeting and testified that she did not hear Defendant make any threats of violence after the meeting toward anyone. (*Id.* at 81). Lavelia Davis was present at the meeting and testified that in previous meetings she observed Smith to be disruptive, hostile, and offensive. (Id. at 69). Willie Wanton attended the meeting via video conference and testified that he did not see anyone being attacked or threated at the meeting but noted that quite a few people were talking out of turn. (*Id.* at 59-60, 63). Janet Johnson attended the meeting via video conference and testified that during past meetings Smith was volatile toward her. (*Id.* at 64-65).

[7] On the citation, officers described the offense as "Conduct which creates a loud boisterous noise, obstructing normal use of Elevator. Disorderly Conduct[.]" (Id.) The Statement of Probable Cause explains: "An Investigation supported by video footage of the incident, lead VA Police to charge employee Justicia Rizzo with 38 CFR 1.218 (a)(5)(b)(11) Disorderly Conduct. Rizzo did wait in the corridor for approximately 20 minutes for the victim to come out of a meeting for the purpose of loudly arguing with the victim in front of co-workers outside the Directors Conference Room. Rizzo was in a similar confrontation two weeks prior to this incident with another employee and was issued a verbal warning by VA Police." (*Id.*)

4

II.     Applicable Law

Federal Rule of Criminal Procedure 33, which governs the pending motion, states that "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(b); see also Fed. R. Crim. P. 58(f). The rule provides that a motion for a new trial based upon newly discovered evidence must be filed within 3 years and such a motion based upon any other grounds must be filed within 14 days after the verdict or finding of guilt. Fed. R. Crim. P. 33(a)(1) and (2). To prevail on a motion for a new trial based upon newly discovered evidence, a defendant must show that the new evidence (1) was discovered after the trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal. *United States v. Blackwell*, 459 F. 3d 739, 768 (6th Cir. 2006). However, to prevail on the *Brady* violation claim, a defendant does not have to show that the newly discovered evidence probably would have resulted in acquittal, but rather that the favorable evidence at issue was material. *United States v. Frost*, 125 F. 3d 346, 382 (1997).

III.    DISCUSSION

   A.   New evidence and Brady violations

Defendant fails to specifically identify what new evidence she asserts she has now discovered. However, while reading the motion very liberally, the Court will interpret the motion to include the *Brady* material that was allegedly withheld as the new evidence she is referring to.

5

Defendant argues that three of her subpoenas were not issued. Specifically, subpoenas to Dashawn Sellers and Pamela Brown as well as a subpoena for the meeting minutes for the meeting in question. The Court notes that it is the Defendant's responsibility to issue subpoenas. See Fed. R. Crim. P 17. However, it has been the practice of the local United States Attorneys' Office to, at times, assist a defendant with subpoenas in CVB cases. Here, the Assistant United States Attorney did, in fact, issue the subpoenas to Ms. Sellers and Ms. Brown. Unfortunately, neither Ms. Sellers nor Ms. Brown appeared at the trial. No one requested a continuance to attempt to obtain their appearance in court.[8] Furthermore, Plaintiff called numerous witnesses, many of whom provided duplicative testimony, in her own defense. Defendant has failed to show what Ms. Brown or Ms. Seller would have testified to that was different from the testimony she solicited from the numerous witnesses she called or cross-examined.

As to the meeting minutes, Defendant was instructed as to how to obtain the minutes and apparently she failed to do so. Regardless, the events that led to the charges took place outside of the meeting room after the conclusion of the meeting. Thus, they are not material.

Defendant also argues that the police statements she received were sanitized. The government admits that the statements were redacted pursuant to FOIA regulations, however, she was informed as to why certain names were redacted as well

---

[8] Defendant Rizzo did state that she felt the prosecution intimidated her witnesses by talking to them in a nasty tone. (Trial Transcript, p 14). She later indicated, when asked if she had any additional witnesses to call, that "the only other person would have been Pam Brown , and she's not here." (Trial Transcript, p 90).

as given instructions on how to appeal the decision to redact the names. Defendant did not appeal that decision.

Defendant then argues that she submitted her own evidence that was not placed on the record. This is simply not accurate. Any evidence that was requested by either side to be admitted into evidence was admitted by the Court. Finally, Defendant complains that the "Cincinnati VA Police destroyed the police video related to the probable cause statement." As the video in question was admitted into evidence and viewed by the Court, this argument has no merit. If Defendant is referring to some other video that is not related to the incident that took place outside of the union meeting room such a video would not be material. Thus, a new trial is not warranted.

B. Remaining claims are untimely

None of Defendant's remaining claims can be interpreted to be related to newly discovered evidence. As stated above, the time for filing a motion for a new trial that is not related to newly discovered evidence is within 14 days after the verdict. The verdict in this case was rendered on October 9, 2014 and this motion was not filed until April 24, 2015, thus, the remaining claims are untimely. Defendant has failed to show good cause for her delay. In fact, when the government raised this issue in response to the motion for a new trial, Defendant elected not to file a reply brief.

Nonetheless, the Court will very briefly address each claim.

1. <u>Lack of jurisdiction and discrimination and outrageous government conduct</u> (Doc. 9, p3-5).

In these two sections of her brief, Defendant argues that "Cincinnati VA General Counsel, Demetrius Harris [ ] has a causal connection to the US Attorney, as General Counsel's wife reportedly came from the Prosecutor Office" and that the law was applied to her in a discriminatory manner. She argues support for this discriminatory treatment because the US Attorney moved to dismiss pending charges against three African-American males and because the police report indicated that she is Hispanic when she is not. Such alleged discrimination, even if true, would not be grounds for a new trial in this case. This case is about the actions of this Defendant outside the Union meeting that took place in the corridor leading to the elevator. It does not involve other unrelated cases and such evidence would be inadmissible in a criminal case.

2. <u>Constitutional Rights</u> (Doc. 9, p5)

Defendant argues that her constitutional right to free speech was violated. She also argues that FLRA has jurisdiction and not this Court. Defendant argues about issues that took place <u>during</u> the meeting. Such argument is not relevant. As was stated above and made clear to Defendant numerous times during the trial, her conduct and the conduct of others during the meeting were not at issue in this case. The disorderly conduct citation was issued for Defendant's actions that took place <u>outside</u> the meeting in the corridor. Defendant has not shown any evidence, new or otherwise, that would bring into question the guilty finding made by this Court. At the very best, all

she has presented is reasons why she acted in the manner in which she did. She has not provided a sufficient basis for a new trial.

       3.    <u>Knowingly Presenting False Testimony</u> (Doc. 12, p8)

Defendant alleges that false testimony was provided to the Court. It is unclear who exactly Defendant contends provided false testimony or what that false testimony was. She references this false testimony by stating "Witnesses intentionally provided false testimony and deliberately withheld evidence making the record incomplete." Then she later states that she intends to move to strike the testimony of Elizabeth Benton for also providing false testimony. She alleges that Ms. Benton's remark about feeling threatened was "unworthy of belief but more in line with a retaliatory remark." (Doc. 12, p9). As to these "witnesses" who allegedly provided false testimony, without knowing what testimony she is asserting is false, the Court cannot further evaluate this claim. As to Ms. Benton's remark, the undersigned evaluated the credibility of this witness during the trial and found her to be credible. Additionally, Smith, Williams, Cutright and this Court's review of the video support Benton feeling threatened. Nothing that Defendant now alleges is sufficient to establish grounds for a new trial.

       4.    <u>Denial of counsel and ineffective assistance of the counsel</u> (Doc. 12, p10)

A right to court appointed counsel does not attach to a petty offense where jail time is not being imposed. The record is clear that the Court informed the Defendant that this was a petty offense, that no jail time would be imposed, and that she was not

9

entitled to the free appointment of counsel but that she did have a right to retain counsel. See Fed. R. Crim. P. 58(b)(2)(C) Doc. 9, Tr. p2.

Defendant also argues that her counsel on appeal did not notify her of her rights and submitted a brief to the Court without any citation of case law. Defendant's motions does not set forth what rights she was not notified of and what harm was caused to her by such a failure to notify. In order to demonstrate ineffective assistance of counsel, Defendant must show that her counsel's performance was deficient and that she was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An attorney's performance is deficient if his representation "fell below an objective standard of reasonableness." *Id.* Courts owe trial counsel deference when reviewing his actions and omissions during trial. *Id.* at 689. Defendant has not shown how she was prejudiced by the failure of counsel to cite to any case law in the brief. Furthermore, upon review of the brief, it is clear that counsel cited to the relevant statute and set forth the elements required for disorderly conduct. He further included numerous citations to the trial transcript to argue the facts that support his contention. This claim has no merit.

IV. Conclusion

The interest of justice does not require a new trial, thus, the motion for a new trial should be DENIED.

IT IS SO RECOMMENDED.

*Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge